905 F.2d 825
 Alexzene HAMILTON, As Natural Mother and Next Friend to
James Edward Smith, Petitioner-Appellant,
v.
James A. COLLINS, Director, Texas Department of Criminal
Justice, Institutional Division, Respondent-Appellee.
 No. 90-2551.
 United States Court of Appeals,
Fifth Circuit.
 June 25, 1990.
 
 Ray Donley, Scott, Douglass & Luton, Eden E. Harrington, Austin, Tex., for petitioner-appellant.
 Jim Mattox, Atty. Gen., Robert S. Walt, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.
 Appeal from the United States District Court for the Southern District of Texas.
 Before GEE, GARWOOD, and WIENER, Circuit Judges.
 
 ORDER:
 
 1
 Petitioner-Appellant Alexzene Hamilton (Hamilton), the mother and purported next friend of James Edward Smith (Smith), seeks a stay of Smith's execution, presently set for 12:01 a.m., June 26, 1990, and appeals the district court's orders of June 24, 1990 dismissing Hamilton's habeas petition for lack of standing and denying reconsideration. On June 25, 1990, the district court granted Hamilton's request for certificate of probable cause but denied the request for stay of execution. Concluding that the district court correctly determined that Hamilton lacks standing, we deny the request for stay of execution, affirm the dismissal of Hamilton's habeas petition, deny certificate of probable cause, and hold that the district court erred in granting same.
 
 
 2
 Smith was convicted of capital murder in the Texas courts and was sentenced to death in 1984. His conviction and sentence were affirmed by the Texas Court of Criminal Appeals. Smith v. State, 744 S.W.2d 86 (Tex.Crim.App.1987).
 
 
 3
 In March 1988, the state trial court scheduled Smith's execution for May 11, 1988. At the time of the scheduling of his execution, Smith indicated his desire to waive further attacks on his conviction and sentence, and in April 1988, he filed with the state trial court and the Court of Criminal Appeals an affidavit expressing the same desire and rejecting any attempts which might be made by third parties to try to stop his execution.
 
 
 4
 On May 5, 1988, Hamilton filed in the Court of Criminal Appeals an emergency application to stay execution and for habeas corpus as Smith's next friend, alleging that he was incompetent. The state responded, filing evaluations of April 14, 1988 by Doctors Blevins and Morgan, psychologists at the Texas Department of Corrections, indicating that, although Smith might have suicidal tendencies, he was competent. The Court of Criminal Appeals denied relief, and Hamilton sought certiorari in the United States Supreme Court. The Supreme Court, on May 10, 1988, stayed Smith's execution, Hamilton v. Texas, 485 U.S. 1042, 108 S.Ct. 1761, 100 L.Ed.2d 187 (1988), but the petition for certiorari was denied on April 3, 1990, and the stay thus dissolved. Hamilton v. Texas, --- U.S. ----, 110 S.Ct. 1958, 109 L.Ed.2d 320 (1990). We understand that on June 3, 1990, the Supreme Court denied rehearing.
 
 
 5
 On May 17, 1990, Smith, pursuant to the court's order, appeared before the state trial court, which determined that he was still adamant in his desire not to pursue any remedies in respect to his conviction and sentence and not to be represented by counsel. The trial court, as a precautionary measure, ordered Smith examined by a psychologist and psychiatrist to determine his competency to make such a decision under the standards set forth by this Court in Rumbaugh v. Procunier, 753 F.2d 395, 398 (5th Cir.), cert. denied, 473 U.S. 919, 105 S.Ct. 3544, 87 L.Ed.2d 668 (1985). Accordingly, Smith was examined on May 18 by Dr. Brown, a psychologist, and Dr. Ganc, a psychiatrist, and their letter reports, each dated May 21, 1990, and furnished to the trial court, found Smith competent under the Rumbaugh standards. The state trial court brought Smith back before it on May 23, 1990, and found that he was competent on the basis of these reports, copies of which had been furnished to Smith, and likewise ascertained that he continued in his firm position that he did not desire to challenge his conviction or sentence. Consequently, on that date, the trial court scheduled Smith's execution for June 26, 1990.
 
 
 6
 On June 20, 1990, Hamilton filed in the state trial court and Court of Criminal Appeals an application for stay of execution and for habeas relief on Smith's behalf as his purported next friend, asserting that he was incompetent. This application relied primarily on the June 1990 affidavit of a Florida psychologist, Dr. Carbonnel. She had never seen or examined Smith, but principally relied on certain May 1978 reports from Florida psychiatrists, Dr. Mutter and Dr. Corwin, and Dr. Reichenberg, a Florida psychologist. Presumably because of these reports, in July 1978, a Florida court had found Smith not guilty by reason of insanity of the offense of robbery which had apparently been committed in February 1978. This judgment also directed that Smith receive out-patient psychiatric treatment at a local clinic. The Florida mental health professionals' reports were directed to the local public defender.
 
 
 7
 In connection with Smith's trial for the instant capital murder, two sets of mental competency examinations were performed on order of the state trial court, each at the request of defense counsel, who was aware of the fact that Smith had been found not guilty by reason of insanity by the Florida court in 1978. The first set of these examinations was conducted in June 1983 by Dr. Nottingham, a psychiatrist, and by the above-mentioned Dr. Brown; Dr. Brown and Dr. Nottingham also conducted the second set of examinations in February 1984. In each instance, each doctor found that Smith was competent.
 
 
 8
 On June 21, 1990, the state trial court, having received the state's response to Hamilton's habeas petition, entered written findings and conclusions, recommending to the Court of Criminal Appeals that the petition be denied because it found that Smith was competent under the Rumbaugh standards, and also was sane under the Ford v. Wainwright standards, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). The state trial court particularly relied on the reports of Doctors Ganc, Brown, and Nottingham. It found Dr. Carbonnel's affidavit improperly authenticated, but concluded that if it had properly been authenticated, it would not change the result since she had never seen Smith and since the reports on which she relied were twelve years old. The state trial court also relied on its observations of Smith in open court on numerous occasions, most recently twice in May 1990. On June 22, the Court of Criminal Appeals (one justice dissenting) entered a written order stating that the state trial court's findings and conclusions were supported by the record, and accordingly ordered Hamilton's application for habeas relief on behalf of Smith dismissed.
 
 
 9
 Hamilton filed the instant habeas application with the federal district court on June 23, 1990. Insofar as concerns Smith's asserted incompetency, this application relied on essentially the same matters as had been presented in Hamilton's application to the state trial court. Hamilton also relied, as she had in the state courts, on the state trial court's July 1, 1985 order denying Smith the right to dismiss his counsel in connection with the direct appeal of his conviction and sentence, in which the court said that Smith was incompetent to proceed pro se.
 
 
 10
 As noted, the district court below dismissed Hamilton's application on June 24, 1990 on the ground that the state court determinations that Smith was competent were fairly supported by the record and were hence binding under Demosthenes v. Baal, --- U.S. ----, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990). Later the same day, Hamilton filed a motion for reconsideration with the district court, supported by the affidavit of the same Dr. Brown, in which Dr. Brown stated that he was now aware of certain information he was not previously aware of, namely, the above-referenced May 1978 reports of Doctors Mutter, Corwin, and Reichenberg, the July 1985 finding of the state trial court about pro se representation on appeal, and a newspaper article. Dr. Brown said that this information "may be significant to a current evaluation of Mr. Smith's competency," that "I cannot be certain that my recent conclusion that Mr. Smith is competent would have been the same had I been aware of the [above-described] information," and "in order to determine Mr. Smith's current competency further psychological evaluation, including interviewing and testing, in light of the above information, is required." The district court denied reconsideration, concluding that the July 1985 order was not based on mental incompetency, but was rather simply a desire to see that Smith got adequate legal representation on his direct appeal, and that Dr. Brown's most recent affidavit did not say that Smith was incompetent, that Dr. Brown was not the only basis for the state court's determination that Smith was competent, and that even without Dr. Brown that determination was fairly supported by the record. Hamilton then filed a motion for reconsideration in the Court of Criminal Appeals, and in the state trial court, likewise based on Dr. Brown's June 24 affidavit.
 
 
 11
 On June 25, the state trial court had Dr. Brown reexamine Smith, and received Dr. Brown's affidavit concerning the results of his reexamination of Smith on June 25, 1990, in which Dr. Brown said inter alia:
 
 
 12
 "Having now re-evaluated James Edward Smith in light of the foregoing information, I have concluded that Mr. Smith does not exhibit any signs of mental illness or mental defect, that he is capable of making a rational choice among his legal options, and that he is fully aware of his legal options. Additionally, Mr. Smith is fully aware that his execution is scheduled for sometime past midnight tonight on June 26, 1990 and the reasons for his punishment or execution. Mr. Smith did not exhibit any evidence of suicidal ideation, any signs of a psychotic process and any evidence of delusional religious beliefs. Finally, I did not find any evidence of cognitive deficit that might be attributed to brain damage or organic brain syndrome."
 
 
 13
 The state trial court, on June 25, having considered Dr. Brown's June 25 affidavit, entered supplemental written findings of fact and conclusions of law, which reaffirmed its original findings of June 21, 1990, finding that Smith was in all respects competent under the Rumbaugh standards and the Ford v. Wainwright standards, and that there was accordingly no jurisdiction to entertain Hamilton's petition and motions as next friend, and recommending that the Court of Criminal Appeals dismiss Hamilton's pleadings. The Court of Criminal Appeals dismissed Hamilton's motion for reconsideration in a June 25, 1990 written order.
 
 
 14
 We have fully reviewed the relevant papers, aided by the parties' informational filings with us as the case progressed.
 
 
 15
 We conclude that the district court was clearly correct in dismissing Hamilton's application because the state court findings of June 21, June 22, and June 25, 1990 that Smith was and is competent in the relevant legal sense are fairly supported by the record and are hence binding on us under Baal. The state courts had before them and considered Hamilton's evidence. Ample support for the state court findings is found in the reports of Doctors Ganc, Brown, and Nottingham, and the personal observations of the state trial court. The affidavit of Dr. Carbonnel does not require a different conclusion; she has never examined Smith, and relied primarily on May 1978 reports. We note that one of these, that of Dr. Mutter, clearly found Smith competent to stand trial, a view which was apparently accepted by the Florida court because it did try Smith and acquitted him by reason of insanity at the time of the offense. It also did not order Smith committed to an in-patient institution, but only to out-patient care. We also note that defense counsel in the present case was aware of the Florida court order, and at counsel's instance, competency examinations were ordered by the trial court and performed in 1983 and 1984 and Smith was found competent to stand trial. In the direct appeal of Smith's conviction, though his counsel raised several points, no complaint was made that Smith was not competent. The state court conducting Smith's trial obviously considered that he was competent. The 1988 reports of Doctors Morgan and Blevins also support the finding of competency. It is clear to us that the July 1985 order of the state trial court concerning representation on appeal was not based on any determination of mental incompetency in the sense of Rumbaugh or Ford v. Wainwright, but was rather simply an effort to ensure that Smith was represented by counsel on appeal. No medical evidence or anything of that nature was considered in connection with that order.
 
 
 16
 Under Baal, it is clear there are no grounds for a stay of execution or a certificate of probable cause. The district court clearly erred in issuing a certificate of probable cause. See Johnson v. Cabana, 818 F.2d 333 (5th Cir.), cert. denied, 481 U.S. 1061, 107 S.Ct. 2207, 95 L.Ed.2d 861 (1987). The district court's dismissal of Hamilton's habeas application is AFFIRMED. Hamilton's motion for a stay of execution is DENIED.